FILED
COURT OF APPEALS
DIVISION II

2013 NOV -5  AM 8:57

STATE OF WASHINGTON

BY_____
          DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of: | |
| REGINA KATHERINE COTA, | No. 43037-1-II |
| Petitioner, | |
| and | PUBLISHED OPINION |
| ANTHONY FRANCIS COTA, | |
| Respondent. | |

MAXA, J. – Anthony Cota appeals the trial court's child support order requiring him to pay for one-third of his daughter's college expenses. He argues that the trial court (1) did not have authority to order postsecondary educational support because his former wife did not request the support award until after his daughter turned 18, (2) abused its discretion when it determined that an award of postsecondary educational support was proper, and (3) violated RCW 26.19.065(1) because the award of postsecondary educational support increased his child support obligation to more than 45 percent of his net income.

We affirm on the first two issues. Because the 2010 child support order expressly provided that Anthony's[1] support obligation would terminate at the age of majority *except* for postsecondary educational support, the trial court had authority to order such support even

---

[1] Because the parties in this case share the same last name, we refer to them by their first names. We intend no disrespect.

though the request for postsecondary educational support was filed after the daughter turned 18. Further, the record supports the trial court's conclusion that a postsecondary educational award was appropriate under the factors outlined in RCW 26.19.090(2). However, we reverse and remand on the third issue. We are constrained to hold that postsecondary educational expenses constitute "child support" under RCW 26.19.065(1), and therefore the trial court's order improperly required Anthony to pay more than 45 percent of his net monthly income in child support without first finding good cause.

## FACTS

Anthony and Regina Cota divorced in 2006. The trial court entered an order of child support providing for their two minor children,[2] ages 14 and 11. This initial child support order provided for postsecondary educational support and required the parties to pay their pro rata shares of any postsecondary educational expenses.

In 2010, Regina requested that the trial court award specific postsecondary educational support for their daughter Annamarie, who at that time was 17. The commissioner reserved ruling on the issue, reasoning that a ruling on postsecondary educational support was premature because Annamarie had not yet been accepted to college and the amount of her educational expenses was not yet clear. Consistent with that ruling, the commissioner modified the applicable sections of the original support order to read as follows:

> 3.13 **Termination of Support**
> Support shall be paid until the children turn 18 or until the children graduate from high school, whichever occurs last, except as set forth in Paragraph 3.14 below.
> 3.14 **Post Secondary Educational Support**
> Post-secondary support determination is premature and is reserved for future determination.

---

[2] The couple has a third daughter who was age 18 at the time the order was entered.

Clerk's Papers (CP) at 130.

In 2011, Anthony moved to modify his child support obligation. Regina opposed the motion and again requested that the commissioner award postsecondary educational support for Annamarie. At the time of the motion Annamarie had turned 18, graduated from high school, and enrolled at Pacific Lutheran University. The total cost for the 2011-12 school year was $22,282 after financial aid and scholarships. This amount was less than the cost to attend Washington State University. Annamarie took out loans in her own name for $5,474 and Regina paid the remaining $16,808. Regina requested that the commissioner order Anthony to reimburse her for his pro rata share.

Anthony opposed Regina's request for postsecondary educational support. He argued that Regina failed to adequately document Annamarie's educational expenses and that the commissioner did not have authority to award postsecondary educational support because Annamarie was over 18 when the petition was filed. The commissioner rejected these arguments and ordered Anthony to pay his pro rata share of the postsecondary educational expenses "pursuant to the statutory criteria and the 2006 order of child support." CP at 306.

Anthony moved for revision of the commissioner's ruling. The parties presented evidence and argument regarding application of the factors in RCW 26.19.090(2) for evaluating postsecondary educational support. The trial court denied the motion. In its oral ruling, the trial court stated that it had evaluated the statutory factors and had determined that a postsecondary educational support award was appropriate. The trial court also stated that it evaluated the parents' "current and future capacity to pay." Report of Proceedings (Dec. 2, 2011) at 34. Based on these factors, the trial court ordered Anthony to pay his pro rata share of Annamarie's 2011-12 college tuition and one-third of her future tuition.

3

Anthony moved for reconsideration of the trial court's ruling. He argued that the payment of postsecondary educational expenses would increase his child support obligation to more than 45 percent of his net monthly income, in violation of RCW 26.19.065(1). The trial court concluded that postsecondary educational expenses were not included in the statutory cap.

Anthony appeals the trial court's order regarding postsecondary educational expenses and denial of the subsequent motion for reconsideration.

## ANALYSIS

### A.    POST-MAJORITY MOTION FOR POSTSECONDARY EDUCATIONAL SUPPORT

Anthony argues that the trial court did not have jurisdiction to award postsecondary educational support because at the time Regina made the request, Annamarie had reached age 18. However, the trial court clearly had *jurisdiction* to address postsecondary educational support. *In re Marriage of Major*, 71 Wn. App. 531, 533-36, 859 P.2d 1262 (1993). At issue here is whether the trial court had *authority* to order postsecondary educational support in light of RCW 26.09.170(3). *See Major*, 71 Wn. App. at 536.

RCW 26.09.170(3) provides: "Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child." For purposes of this statute, "emancipation" refers to the age of majority – 18. *In re Marriage of Gimlett*, 95 Wn.2d 699, 702-04, 629 P.2d 450 (1981). If a decree does not provide for post-majority support, a party must file a motion to modify to add such support before the child turns 18. *Balch v. Balch*, 75 Wn. App. 776, 779, 880 P.2d 78 (1994). Conversely, if a decree expressly provides for post-majority support, a court may modify such support as long as the movant files a motion to modify before the "termination of support". *Balch*, 75 Wn. App. at 779.

4

Here, it is undisputed that the trial court entered its order requiring postmajority support after Annamarie turned 18. Therefore, the question is whether, under the child support order in effect when Annamarie turned 18, Anthony's support obligation had terminated when Regina filed her motion to modify. If such support had not terminated, the motion was timely.

"Interpretation of a child support order is a question of law that we review de novo." *In re Marriage of Sagner*, 159 Wn. App. 741, 749, 247 P.3d 444, *review denied*, 171 Wn.2d 1026 (2011). In determining whether the child support order authorizes an award of postsecondary educational support, we look to whether "the support-paying parent has notice that the support obligation will extend past the age of majority." *Rains v. Dep't of Soc. & Health Servs.*, 98 Wn. App. 127, 137, 989 P.2d 558 (1999) (citing *Balch*, 75 Wn. App. at 780). The rationale for requiring post-majority support to be expressly provided in a decree is that the support-paying parent must be "given advance notice of the termination date or event, rather than being forced to wait for some elusive or fortuitous date of the dependency cessation." *Gimlett*, 95 Wn.2d at 703.

Where the terms of a dissolution decree clearly state that support terminates upon the occurrence of specific events, courts have held that the trial court lacked authority to consider a postsecondary educational support award. *In re Marriage of Gillespie*, 77 Wn. App. 342, 347-48, 890 P.2d 1083 (1995). In *Gillespie*, the dissolution decree provided that support would continue until the child "shall reach the age of eighteen (18) years, shall marry, shall become self-supporting or shall no longer be dependent upon the wife." 77 Wn. App. at 344 (emphasis omitted) (internal quotation marks omitted). After the child turned 18, the mother filed a petition to modify the decree to provide for postsecondary educational support. *Gillespie*, 77 Wn. App. at 344. Division Three of this court held that the trial court did not have authority to modify the

5

decree because the support obligation had terminated when the child turned 18 under the conditions in the decree. *Gillespie*, 77 Wn. App. at 347-48.

However, the result is different if an order expressly extends support beyond the age of majority. In *Balch*, the dissolution decree provided that "the children shall be supported until they are no longer in need of support." 75 Wn. App. at 780 (internal quotation marks omitted). The trial court declined to consider an award for postsecondary educational support because the child had reached the age of majority at the time the modification petition was filed. *Balch*, 75 Wn. App. at 778. This court reversed, holding:

> Although this stipulated language lacks precision as to the duration and nature of child support, it clearly expresses an intention to continue child support beyond majority if [the child] remained dependent in fact. *See* RCW 26.09.170(3). Further, the language is sufficient to put the payor parent on notice that the child support obligation may continue after majority.

*Balch*, 75 Wn. App. at 780. The court concluded that the decree language was " 'sufficiently explicit' " under RCW 26.09.170(3) to allow the imposition of postsecondary educational support. *Balch*, 75 Wn. App. at 780 (quoting *In re Marriage of Nielsen*, 52 Wn. App. 56, 60, 757 P.2d 537 (1988)).

Here, both the original decree and the 2010 modification order expressly provided that support would terminate when the child turned 18 (or graduated from high school if later) *except* for postsecondary educational support. The 2010 order did not state the amount of postsecondary educational support or when the support obligation would end, but it clearly did contemplate that support would continue beyond the age of 18. The trial court reserved for the future the determination of whether postsecondary support would be appropriate and, if so, the specific amount. And by referencing postsecondary educational support and reserving ruling for

6

a future date, the order put the parents on notice that their support obligations could continue past the age of majority. *Gimlett*, 95 Wn.2d at 703; *Balch*, 75 Wn. App. at 780.

Because the modification order "otherwise . . . expressly provided" as required in RCW 26.09.170(3) that the postsecondary educational support obligation would not terminate when Annamarie turned 18, Regina filed her motion to modify before support terminated as required in *Balch*. 75 Wn. App. at 779. Accordingly, the trial court had authority under RCW 26.09.170(3) to modify its previous order and award postsecondary educational support.

Our holding would be the same even if the modification order had not expressly extended postsecondary educational support beyond the age of majority. Regina filed a motion before Annamarie turned 18 requesting that the trial court award postsecondary educational support. The trial court reserved ruling on the issue because it was premature. To preclude Regina from requesting postsecondary educational support after Annamarie reached age 18 when the trial court ruled that the issue was premature at age 17 would be inequitable. Accordingly, we hold that the trial court's pre-majority ruling that the issue of postsecondary educational support was reserved for a later date did not foreclose the trial court from ruling on the issue after the child reached the age of majority.

B.    POSTSECONDARY EDUCATIONAL SUPPORT AWARD

Anthony argues that even if the trial court had the authority to consider a postsecondary educational support award, it abused its discretion in deciding to make the award. We disagree. The trial court has broad discretion to order support for postsecondary education. *Childers v. Childers*, 89 Wn.2d 592, 601, 575 P.2d 201 (1978); *see also In re Marriage of Newell*, 117 Wn. App. 711, 718, 72 P.3d 1130 (2003); *In re Marriage of Kelly*, 85 Wn. App. 785, 795, 934 P.2d

7

No. 43037-1-II

1218 (1997). A trial court abuses that discretion when its decision is based on untenable grounds or reasons. *Newell*, 117 Wn. App. at 718.

RCW 26.19.090(2) gives the trial court discretion to order support for postsecondary educational expenses and sets forth criteria the trial court should consider when making such an award. The trial court initially must find that the child is dependent and "relying upon the parents for the reasonable necessities of life." RCW 26.19.090(2). Once that threshold requirement is satisfied, the trial court must also consider the following non-exhaustive list of factors:

> Age of the child; the child's needs; the expectations of the parties for their children when the parents were together; the child's prospects, desires, aptitudes, abilities or disabilities; the nature of the postsecondary education sought; and the parents' level of education, standard of living, and current and future resources.

RCW 26.19.090(2). "Also to be considered are the amount and type of support that the child would have been afforded if the parents had stayed together." RCW 26.19.090(2).

Anthony argues that the record does not show that the trial court had properly considered the factors in RCW 26.19.090(2). However, the parties presented evidence and argument regarding the factors, and the trial court stated that it had reviewed the factors to determine that an award was appropriate. Although the trial court did not make extensive findings on the record as to each factor, RCW 26.19.090 sets forth no requirement that the trial court explicitly consider the factors on the record. *In re Marriage of Morris*, No. 69430-8-I, 2013 WL 5310206, at *7

8

(Wash. Ct. App. Sept. 23, 2013).[3] And we presume that the court considered all evidence before it in fashioning an order on postsecondary educational expenses. *Kelly*, 85 Wn. App. at 793.

Further, the record supports the trial court's conclusion that the postsecondary educational support award was appropriate. Initially, the trial court knew Annamarie was a recent high school graduate enrolled in a full-time university program and there was no evidence that she had or was capable of earning an income sufficient to meet her "reasonable necessities of life." RCW 26.19.090(2). Accordingly, there was evidence from which the trial court could reasonably find that she was dependent under RCW 26.19.090(2).

With regard to the statutory factors, the trial court was aware of Annamarie's age and the cost of attending college. The 2006 child support order's provision for postsecondary educational expenses showed that Anthony and Regina expected to contribute to their children's college education. Annamarie's admission to a highly regarded university and her receipt of a $5,500 academic achievement scholarship demonstrated her aptitude and her abilities. The trial court knew the nature of the education sought – attendance at Pacific Lutheran University. The trial court had both parents' tax returns and pay stubs for the preceding two years to assess

---

[3] We note that in *In re Marriage of Shellenberger*, 80 Wn. App. 71, 85, 906 P.2d 968 (1995), Division One of this court held that before a trial court can require a parent to pay for postsecondary educational expenses at a private institution, it must "make specific findings as to the cost and availability of college education in the child's chosen field at publicly funded institutions." The court reasoned, "A trial court should not require objecting parents of modest means to pay for private college where the child can obtain a degree in his or her chosen field at a publicly subsidized institution." *Shellenberger*, 80 Wn. App. at 85. We note that this rule may draw an arbitrary distinction between private and public schooling when a more appropriate analysis would be on the actual cost of the school as compared to other reasonable alternatives. However, because Anthony does not raise this issue on appeal, we need not address the propriety of the rule or whether the trial court properly complied with it in this case. Moreover, although the trial court did not make specific findings on the issue, our review of the record shows that Regina presented evidence that the net cost of attending Pacific Lutheran University was less than the cost at Washington State University.

standard of living and resources. And the parents' level of education – neither attended college – did not necessarily negate a finding that it was appropriate for Annamarie to seek postsecondary education. We do not second guess the trial court's discretionary evaluation of these factors. *See In re Parentage of Goude*, 152 Wn. App. 784, 791, 219 P.3d 717 (2009) (trial court does not abuse its discretion in determining postsecondary educational support if it considers all factors in RCW 26.19.090(2)).

Anthony also argues that the trial court abused its discretion in ordering him to pay postsecondary educational support because it would cause him an "undue hardship". Br. of Appellant at 9. In support of his contention, he cites *In re Marriage of Shellenberger*, 80 Wn. App. 71, 84, 906 P.2d 968 (1995), in which Division One of this court held that a trial court abuses its discretion if it awards a postsecondary educational support obligation that would force the obligor parent into bankruptcy or would require selling the family home. The court stated that "[t]his is especially true where the parent also supports a minor child, and the postsecondary support obligation prevents the parent from meeting that obligation to the minor child." *Shellenberger*, 80 Wn. App. at 84. However, other than showing that his expenses exceeded his income, Anthony did not demonstrate sufficient financial hardship to trump the trial court's discretionary ruling that postsecondary educational support was appropriate for Annamarie.

We hold that the trial court did not abuse its discretion in awarding postsecondary educational support because the record supports the conclusion that such support was appropriate under RCW 26.19.090(2).

No. 43037-1-II

## C.    45 PERCENT CAP ON CHILD SUPPORT

Anthony argues that even if an award for postsecondary educational expenses was appropriate, the trial court's order violated RCW 26.19.065(1) because it increased his child support obligation to more than 45 percent of his net income.[4] RCW 26.19.065(1) provides: "Neither parent's child support obligation owed for all his or her biological or legal children may exceed forty-five percent of net income except for good cause shown." The statute defines "good cause" as "possession of substantial wealth, children with day care expenses, special medical need, educational need, psychological need, and larger families." RCW 26.19.065(1)(c).[5] The issue is whether the term "child support obligation" in the statute includes postsecondary educational support.

The interpretation of statutory language is a question of law that we review de novo. *Advanced Silicon Materials, LLC v. Grant County*, 156 Wn.2d 84, 89, 124 P.3d 294 (2005). The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). "[I]f the

---

[4] Anthony's net monthly income at the time the trial court ordered him to pay postsecondary support was $2,169.88. The trial court ordered him to pay $433.66 per month in support for his younger daughter and $8,135.07 for Annamarie's college expenses. The college expense reimbursement amounts to approximately $677.92 per month if divided over a full year. Therefore, under the trial court's order Anthony's child support obligation totaled $1,111.58 per month, or 51 percent of his net monthly income.

[5] RCW 26.19.065 was amended in 2009. LAWS OF 2009, ch. 84, § 2 (eff. Oct 1, 2009). Former RCW 26.19.065 (1998) provided:

> **Limit at forty-five percent of a parent's net income.** Neither parent's total child support obligation may exceed forty-five percent of net income except for good cause shown. Good cause includes but is not limited to possession of substantial wealth, children with day care expenses, special medical need, educational need, psychological need, and larger families.

Former RCW 26.19.065(1). The changes do not affect our analysis. And because the modification order increasing the child support award above 45 percent of Anthony's net income took place in 2011, we cite the current version of the statute.

11

statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Campbell & Gwinn*, 146 Wn.2d at 9-10. The plain meaning of a statute is derived from all the legislature has said in the statute and related statutes that disclose legislative intent about the provision in question. *Campbell & Gwinn*, 146 Wn.2d at 11.

The child support statutes do not address the parameters of the term "child support". RCW 26.19.090 does not state whether "postsecondary educational support" constitutes "child support". Similarly, RCW 26.19.011 – the definitions section of chapter 26.19 RCW – does not define "child support" or "child support obligation". RCW 26.19.011(1) does define "[b]asic child support obligation" as the "monthly child support obligation determined from the economic table" set out in RCW 26.19.020. (Emphasis added.) But use of the term "child support obligation" in RCW 26.19.065(1) contemplates a broader concept. There are no other statutes that provide insight into whether the legislature intended to include postsecondary educational support in the definition of child support obligation.

We are guided by two cases tangentially discussing this issue. In *In re Marriage of Daubert*, Division One of this court addressed the allocation of postsecondary educational support in light of RCW 26.19.090(1), which provides that the "child support schedule" is advisory and not mandatory for postsecondary educational support. 124 Wn. App. 483, 499-500, 99 P.3d 401(2004), *overruled in part on other grounds by McCausland v. McCausland*, 129 Wn. App. 390, 118 P.3d 944 (2007). The issue was whether all of chapter 26.19 RCW (entitled "Child Support Schedule") was advisory or just the economic table set out in RCW 26.19.020. *Daubert*, 124 Wn. App. at 500-01. In this context, the court stated (without analysis or citation to authority) that "[p]ostsecondary educational support is child support." *Daubert*, 124 Wn. App. at 502. Later in the opinion, the court used an example indicating that postsecondary

12

educational support would count against the 45 percent cap in RCW 26.19.065(1) when a younger sibling is involved.[6] *Daubert*, 124 Wn. App. at 503.

More significantly, our Supreme Court addressed the meaning of "child support" in *In re Marriage of Schneider*, 173 Wn.2d 353, 367-68, 268 P.3d 215 (2011). In *Schneider*, the court addressed whether postsecondary educational support constituted "support" within the meaning of the Uniform Interstate Family Support Act, chapter 26.21 RCW. 173 Wn.2d at 367. The court explained that postsecondary educational support "fits within the structure of the child support statute in general" and in some situations "can function just like ordinary child support." *Schneider*, 173 Wn.2d at 368. Accordingly, the court concluded that postsecondary educational support "is money paid to support a dependent child, therefore it is child support." *Schneider*, 173 Wn.2d at 368.

Although *Schneider* did not involve RCW 26.19.065(1), we believe that our Supreme Court's statement that postsecondary educational support is child support controls here. Therefore, we hold that postsecondary educational support is part of a parent's "child support obligation" for the purposes of the 45 percent limitation in RCW 26.19.065(1). The trial court violated RCW 26.19.065(1) when it set Anthony's child support obligation, including postsecondary educational support, at an amount greater than 45 percent of his net monthly income.

We are aware that capping the child support obligation at 45 percent – including postsecondary educational expenses – may in certain circumstances mean that a parent cannot be required to pay such expenses, even when the RCW 26.19.090(2) factors support payment.

---

[6] Similarly, in *Morris*, Division One assumed without discussion that postsecondary educational support would be included in the 45 percent cap. 2013 WL 5310206, at *9.

13

However, RCW 26.19.065(1) allows the trial court to exceed the 45 percent cap "for good cause shown", which includes "educational need".

We affirm the trial court's authority to award postsecondary educational support and its determination that an award of postsecondary educational support was proper. But we reverse the trial court's postsecondary educational support order and remand to the trial court with directions to comply with RCW 26.19.065(1) by either reducing Anthony's child support obligation to 45 percent of his net monthly income or determining that good cause exists for exceeding the 45 percent cap.

MAXA, J.

We concur:

JOHANSON, A.C.J.

BJORGEN, J.

14