# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Parentage of | ) | No. 74165-9-I |
| M.R.A., | ) ) | |
| A minor child. | ) ) | DIVISION ONE |
| ARIKA L. R. TONEY, | ) ) | UNPUBLISHED OPINION |
| Appellant, | ) ) | |
| and | ) ) | |
| TIMOTHY J. AHEREN, III, | ) ) | |
| Respondent. | ) ) | FILED: January 25, 2016 |

TRICKEY, J. — Within statutory requirements, the trial court has broad discretion to determine child support. Here, the evidence amply supports the trial court's calculation of Timothy Aheren's net income and award of post-secondary support. Because Arika Toney fails to demonstrate any abuse of discretion or error warranting appellate relief, we affirm the order modifying child support.

## FACTS

Arika Toney and Timothy Aheren are the parents of M.R.A., who was born in 1997. A 1998 child support order set Aheren's monthly support obligation at $256. Toney and M.R.A. have lived in Reno, Nevada, for many years.

In 2010, the trial court modified the 1998 support order. Among other things, the court calculated Aheren's monthly transfer payment to be $450.22. The court granted Aheren a downward deviation from the standard calculation of $530.22 because he was responsible for two additional dependent children from another

relationship. The order also awarded the federal tax exemption to each parent in alternating years and reserved the right to request post-secondary support.

On November 20, 2013, Toney petitioned for a modification of child support. Among other things, she requested an award of post-secondary support because M.R.A. planned to graduate early from high school at age 16. Toney also alleged that Aheren's income had doubled since 2010.

Following hearings on July 17, September 12, October 24, and November 21, 2014, the trial court entered an order modifying child support. The court retained the downward deviation based on Aheren's support of his two younger children and calculated the transfer payment to be $559.31. The court ordered Aheren to make the transfer payment until M.R.A. turned 18, which occurred in July 2015.

The court also ordered Aheren to pay 55 percent of any post-secondary educational expenses if M.R.A. attended college before she turned 18. After turning 18, M.R.A. became responsible for one-third of educational expenses; Aheren is responsible for 55 percent of the remaining expenses and Toney for 45 percent. The court limited post-secondary support to in-state-costs at the University of Nevada-Reno, which M.R.A. planned to attend. The court awarded Toney the tax exemption for M.R.A, beginning in 2014, and a judgment for $1,109 for past-due unpaid medical expenses.

## ANALYSIS

### Standard of Review

An appellate court reviews an order modifying child support for an abuse of discretion. In re Marriage of Schumacher, 100 Wn. App. 208, 211, 997 P.2d 399

(2000). The trial court's experience in domestic relations proceedings and the weight that the court assigns to the relevant factors warrant substantial deference on review. In re Parentage of Jannot, 149 Wn.2d 123, 127, 65 P.3d 664 (2003). In order to prevail on appeal, Toney must therefore demonstrate that the trial court's decision was manifestly unreasonable or was based on untenable grounds or untenable reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

### Post-secondary Support

Toney contends that the trial court erred in requiring M.R.A. to pay a portion of her college expenses after age 18 and in limiting educational support based on tuition costs in Nevada. She argues that the court should have calculated educational support based on costs in Washington because Washington is M.R.A.'s "[h]ome [s]tate."[1]

The trial court has broad discretion to order support for post-secondary education. In re Marriage of Cota, 177 Wn. App. 527, 536, 312 P.3d 695 (2013); see also RCW 26.19.090(2). Here, the record is undisputed that M.R.A. is a bright and dedicated student, with a high grade point average, who was eligible for scholarship grants. At the time of the modification hearing, M.R.A. had graduated early from high school and had attended a college class. The evidence clearly supported a determination that she could contribute to post-secondary education costs. The support order expressly provided that M.R.A.'s financial aid, including scholarship grants and student loans, would be applied to her one-third obligation. See In re

---

[1] Br. of Appellant at 5.

Marriage of Shellenberger, 80 Wn. App. 71, 84, 906 P.2d 968 (1995) (when awarding post-secondary support, court should consider adult children's ability to contribute to their own education through scholarship grants, student loans, and part-time or summer employment). After considering all of the circumstances, including the parents' financial resources, the court reasonably imposed an obligation on M.R.A. to pay a portion of her educational costs. See In re Marriage of Kelly, 85 Wn. App. 785, 789-90, 934 P.2d 1218 (1997) (affirming post-secondary support order requiring child to apply for scholarships and take out student loans).

Toney has not demonstrated that the court abused its discretion in limiting post-secondary support to the costs of a Nevada public university. M.R.A. has lived in Nevada almost since birth. At the time of the hearing, Toney informed the trial court that M.R.A. had already enrolled in college, was taking a college course in Nevada, and planned to attend the University of Nevada–Reno in the fall. Toney does not identify any evidence in the record suggesting that M.R.A. considered attending school in Washington.

Toney's allegation that the trial court erroneously "terminated[ed] child support" when M.R.A. turned 18 is equally without merit.[2] Although the support order provided that Aheren's transfer payment terminated when M.R.A. turned 18, the court ordered both parents to pay post-secondary education expenses. "Postsecondary educational support is child support." In re Marriage of Daubert, 124 Wn. App. 483, 502, 99 P.3d 401 (2004), abrogated on other grounds by In re Marriage of

---

[2] Br. of Appellant at 4.

McCausland, 159 Wn.2d 607, 152 P.3d 1013 (2007) (emphasis added). Aheren's child support obligation did not terminate when M.R.A. turned 18.

Finally, Toney alleges that the trial court's rulings, including the post-secondary support decision, rested on an erroneous "[h]ome [s]tate"[3] determination. The trial court made no such determination. Moreover, Toney fails to identify the relevance of the "home state" concept, which she has apparently drawn from the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), chapter 26.27 RCW, to the trial court's exercise of discretion in calculating post-secondary support.

## Deviation

Toney contends that the trial court erred in continuing the downward deviation from the 2010 support order when calculating Aheren's new transfer payment. Under RCW 26.19.075(1)(e), the trial court has discretion to deviate from the standard calculation when one of the parties has a child from another relationship "to whom the parent owes a duty of support." See In re Marriage of Choate, 143 Wn. App. 235, 241-42, 177 P.3d 175 (2008). Contrary to Toney's suggestion, "Duty of support" means "all support obligations, not merely payments of court-ordered child support." In re Marriage of Bell, 101 Wn. App. 368, 371 n.9, 4 P.3d 849 (2000). But the court must base any deviation "on consideration of the total circumstances of both households." RCW 26.19.075(1)(e)(iv).

Here, as in the 2010 support order, the trial court based the deviation on Aheren's support obligation for two younger children from another relationship.

---

[3] Br. of Appellant at 5.

Aheren provided the court with evidence that he and the children's mother were parties in a current dissolution proceeding, that the anticipated parenting plan provided for equal parenting time, and that the proposed child support worksheets established Aheren's monthly transfer payment as $325. The trial court also had ample evidence of both parties' income and financial resources, current residential circumstances, and all of M.A.R.'s current needs and educational expenses. The court did not abuse its discretion in granting a deviation.

Toney contends that the trial court erred in using the "whole family" formula to calculate Aheren's deviation.[4] The whole family approach is a discretionary method for calculating deviations that the trial court may use for guidance when parents owe support obligations for more than one household. See Marriage of Bell, 101 Wn. App. at 375. Courts are not bound to use any particular formula when calculating deviations. Marriage of Bell, 101 Wn. App. at 375. But where, as here, the court has considered the circumstances of both parents' households, the trial court does not abuse its discretion in using the whole family formula. See Marriage of Bell, 101 Wn. App. at 375-76.

### Calculation of Income

Toney contends that the trial court erred by calculating Aheren's net income "at a[n] artificially low figure to reduce both child support obligation and post secondary education support."[5] Among other things, she argues that the trial court erred by using the 2014 federal tax tables to calculate Aheren's net income. But as

---

[4] Clerk's Papers at 290.
[5] Br. of Appellant at 12.

6

the trial court observed, the use of the 2014 tax tables for a 2014 child support proceeding was reasonable. Toney makes no showing to the contrary.

Toney also asserts that the trial court erred in deducting Aheren's voluntary monthly retirement payments from his gross income. But her reliance on a statutory provision addressing deviations "for tax planning" is misplaced. See RCW 26.19.075(1)(a)(viii). RCW 26.19.071(5)(g) authorizes the trial court to deduct voluntary retirement contributions when calculating a party's net income.

Toney also contends that Aheren submitted incomplete, inadequate, and fraudulent financial information and failed to provide a sworn financial affidavit. She also challenges the trial court's use of SupportCalc software to calculate support obligations and an obvious scrivener's error on the support order. But Toney has not supported these conclusory allegations with any coherent legal argument, citation to relevant authority, or meaningful reference to the record. We therefore declined to consider them. See Saunders v. Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989) (appellate court will decline to consider issues unsupported by cogent legal argument and citation to relevant authority).

## Reply Brief

In her reply brief, Toney asks this court to strike the respondent's brief because of counsel's alleged improper notice of appearance and various alleged violations of the Rules of Appellate Procedure. Toney makes no showing that the alleged errors or violations warrant the requested relief.

Moreover, Toney's own briefs contain significant violations of the Rules of Appellate Procedure, including RAP 10.3(a)(5) (statement of the case must be "[a]

fair statement of the facts and procedure relevant to the issues presented for review, without argument" (emphasis added)) and 10.3(a)(6) (argument in brief must include "citations to legal authority and references to relevant parts of the record"). Even though Toney is representing herself pro se, we must hold her to the same standards as an attorney. See In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993).

## Attorney Fees on Appeal

Toney's pro se request for "an award of attorney's fees and costs"[6] on appeal is denied.

Aheren requests an award of attorney fees for a frivolous appeal. See RAP 18.9(a). An appeal is frivolous "if the appellate court is convinced that the appeal presents no debatable issues upon which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal." In re Marriage of Foley, 84 Wn. App. 839, 847, 930 P.2d 929 (1997). We consider the record as a whole and resolve all doubts against finding an appeal frivolous. Delany v. Canning, 84 Wn. App. 498, 510, 929 P.2d 475 (1997) (quoting Streater v. White, 26 Wn. App. 430, 435, 613 P.2d 187 (1980)). Applying this standard, we decline Aheren's request for attorney fees.

---

[6] Br. of Appellant at 23.

Affirmed.

WE CONCUR:

_Trickey, J_

_Jau, J_                    _Becker, J._